IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TAMIE LEE CAWLEY, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:10-cv-538-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
|     Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Tamie Lee Cawley ("Plaintiff" or "Cawley") originally applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, on November 8, 2007. Tr. 12. After being denied, Cawley timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on September 10, 2009. Tr. 20. Cawley subsequently petitioned for review to the Appeals Council who rejected review of Cawley's case on May 21, 2010. Tr. 1. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

**I. NATURE OF THE CASE**

Cawley seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits. United States District Courts may conduct

limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact,

and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III.  STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement,

provided they are both insured and disabled, regardless of indigence.[1] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Cawley, age 41 at the time of the hearing, has completed the twelfth grade. Tr. 24. Cawley performed past relevant work as a sewing machine operator (semi-skilled, light), button-hole machine operator (unskilled, light), fast foods worker (unskilled, light), daycare worker (semi-skilled, light), and as a survey worker (unskilled, light). Tr. 44-45. Although Cawley has briefly worked since, Cawley has not engaged in substantial gainful

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

work activity since her alleged disability onset date of July 1, 1998. Tr. 14. Cawley last met the insured status requirements of the Social Security Act on June 30, 2002. *Id.* Cawley claims she is unable to work because of pain in her back and legs, numbness in her hands and feet, and obesity. *Id.* All of Cawley's alleged disabilities stem from a motorcycle accident. *Id.* Cawley rates her average daily pain as a level eight on a ten point scale with ten being the highest level of pain. Tr. 37.

Cawley received treatment from various medical practitioners and the ALJ considered the medical records from these practitioners. Tr. 14-19. The ALJ noted a large gap in medical treatment from 1999 through 2004, which is the majority of the time between Cawley's alleged onset date and the date she was last insured. Tr. 17. Cawley attributes the large gap to lack of health care insurance. *Id.* Cawley's initial x-rays following her motorcycle accident showed "no obvious abnormalities in her knee or back." Tr. 14. Upon later examination, however, a MRI of Cawley's knee revealed "anterior cruciate ligament (ACL) disruption as well as bone contusions, a subchondral impaction of the lateral femoral condyle, and soft tissue edema." Tr. 14-15. On August 5, 1998, Dr. Keith Granger performed arthroscopic surgery to repair Cawley's ACL. Tr. 15. Dr. Granger recommended rehabilitation services and prescribed pain medication and an antibiotic. *Id.* Although, the surgery and Cawley's initial recovery were deemed successful, the ALJ still noted that it caused Cawley minimal limitations in her ability to perform work activity. *Id.*

Dr. J. Paul Maddox performed an evaluation for Cawley's back pain. Tr. 178. Dr. Maddox observed no objective spasm, a negative straight leg raising test, and stated that

"based on the improvement since the dirt bike accident and her current functional abilities that there was no new significant event causing her back pain as a result of the accident." Tr. 15. Dr. Maddox did observe that Cawley's MRI showed a degenerative disc disease and prescribed an anti-inflammatory, heat, and exercise. *Id.* Dr. Maddox noted in subsequent visits that Cawley's back pain complaints have increased, but attributed the increase to her obesity, and suggested increased activity and weight loss. *Id.* The ALJ found that Cawley's back pain and obesity have caused "minimal limitations in her ability to perform work activity," and thus are considered a severe impairment. *Id.*

The ALJ found that through the last date insured, Cawley did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments. *Id.* The ALJ found that Cawley "has not been incapable of effective ambulation as required by the regulations," he found a lack of medical evidence of nerve root compression, and he found a lack of diagnosis of spinal arachnoiditis. *Id.* The ALJ also found that through the date last insured, Cawley had the residual functioning capacity to perform light work, except that Cawley has to change positions among sitting, standing, and walking at her discretion. *Id.* The ALJ also found that Cawley was capable of performing her past relevant work as a daycare worker. Tr. 19.

## V. ISSUES

Cawley raises two issues for judicial review:

(1) Whether the ALJ conducted a proper credibility finding; and

(2) Whether the ALJ's Residual Functional Capacity (RFC) assessment is supported by the evidence, despite the lack of an RFC assessment by a physician.

*See* Doc. 9 at 8.

## VI. DISCUSSION

**A.     The ALJ properly considered Cawley's credibility in compliance with Eleventh Circuit law.**

Cawley argues that the ALJ erred in assessing her credibility. *See* Doc. 9 at 8. Cawley rests her claim on two grounds. *See Id.* at 11-12. First, Cawley argues that the ALJ failed to properly apply the Eleventh Circuit's two-part pain standard. *See Id.* at 8-12. Cawley argues that the ALJ made favorable determinations based on the pain standard, but failed to render a favorable decision based on her credibility concerning the intensity, persistence, and limiting effects of her pain. *See Id.* at 11. Second, Cawley claims that the ALJ issued a negative credibility finding based on Cawley's lack of regular and consistent medical treatment without considering her financial inability to pay for treatment as justification to excuse her lack of medical treatment. *See Id.* at 12-13.

The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled. 20 C.F.R. § 404.1512; *Jones*, 190 F.3d at 1228. The Eleventh Circuit has set forth criteria to establish a disability based on testimony about pain and other symptoms. It explained that

> the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted).

A "claimant's subjective testimony supported by medical evidence that satisfies the [pain] standard is itself sufficient to support a finding of disability." *Brown*, 921 F.2d at 1236. "Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote*, 67 F.3d at 1561. "When evaluating a claimant's subjective symptoms, the ALJ must consider the following factors: (i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief ... of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'" *Leiter v. Comm'r of Soc. Sec. Admin.*, 377 Fed. Appx. 944, 947 (11th Cir. 2010) (quoting 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3)).

An ALJ must explicitly explain why he chose not to credit a claimant's testimony. *Brown*, 921 F.2d at 1236. When evaluating a claim based on disabling subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician, and evidence of how the pain affects the claimant's daily activities and ability to work. *See* 20 C.F.R. § 416.929(a). "The decision concerning the plaintiff's credibility is a function solely within the control of the Commissioner and not the courts." *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1213 (M.D. Ala. 2002). "A clearly articulated

credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562 (citing *MacGregor*, 786 F.2d at 1054).

A claimant's subjective testimony can establish disability if it is sufficiently supported by medical evidence. *Brown*, 921 F.2d at 1236. Testimony from a claimant alone is not conclusive evidence of disability. *See Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987). Regulations at 20 C.F.R. § 404.1529(c)(4) permit an ALJ to consider inconsistencies or conflicts between a claimant's statements and other evidence. *Osborn v. Barnhart*, 194 Fed. Appx. 654, 664-65 (11th Cir. 2006). An ALJ's credibility findings are an important factor in the application of the pain standard. *Wilson,* 284 F.3d at 1225.

No party disputes that Cawley's "status post right knee traumatic injury requiring surgery, degenerative disc disease, and obesity" constitute underlying medical conditions. Tr. 14. The ALJ addresses every medical visit on record and did not find objective medical evidence to confirm the severity of the pain Cawley alleges. *See* Tr. 14-18. The ALJ found, after considering all of the evidence, that Cawley's impairments could reasonably be expected to cause the alleged symptoms; however, he found Cawley's statements concerning the intensity, persistence and limiting effects of the symptoms to be not credible because they are inconsistent with his residual functional capacity assessment. Tr. 16. The ALJ, with the assistance of a VE, found that through the relevant period (alleged onset date through the last date insured) Cawley had the residual functioning capacity to perform light work, except that Cawley has to change positions among sitting, standing, and walking at her discretion. Tr. 15.

Here, the ALJ found that Cawley's credibility was undermined by her ability to work for two weeks in 2004, the fact that she quit working two years prior to her alleged onset date, the lack of regular and consistent medical treatment and substantial medication, inconsistent reports of symptoms during treatment, moderate to mild clinical signs prior to the date last insured, and that her daily activities do not support her allegations.  Tr. 16, 18-19.  All of these are factors properly considered by the ALJ.  *See Leiter*, 377 Fed. Appx. at 947.

Cawley claims that the ALJ issued a negative credibility finding based on Cawley's lack of regular and consistent medical treatment without considering first that financial inability is an underlying factor to her lack of medical treatment.  *See* Doc. 9 at 12-13.

The Eleventh Circuit has held that "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability;" but the court also stated that "poverty excuses noncompliance."  *Ellison,* 355 F.3d at 1275 (quoting *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).  However, an ALJ is only required to determine whether the claimant is financially able to seek ongoing treatment and fill prescriptions when noncompliance is the *sole ground* for denial of disability benefits, and the record contains evidence that the claimant is financially unable to seek treatment.  *Id.*

Noncompliance is not the sole factor the ALJ used to reach his negative credibility finding.  Although, he clearly found that Cawley's lack of regular and consistent medical treatment and lack of substantial medication undermines her credibility regarding the pain rising to a disabling degree as being one factor, he just as clearly expressed the several

other reasons previously mentioned that were inconsistent with Cawley's subjective testimony of disabling pain. Tr. 16, 18-19. The ALJ did not base his credibility finding solely on Cawley's lack of regular and consistent medical treatment, but rather as only a single factor among many. Therefore, the ALJ was not required to determine if Cawley was financially unable to seek treatment. *See Ellison*, 355 F.3d at 1275.

Cawley also argues that the ALJ erred in his credibility determination because he took Cawley's daily activities into consideration in making his findings, without taking into account the rest breaks required. *See* Doc. 9 at 12. The Court finds this argument lacking. Several times the ALJ clearly qualified his statements regarding Cawley's daily activities to include the rest breaks required. Tr. 16-17. The ALJ considered Cawley's ability to "wash dishes and clean the house with breaks," he considered her need to "shift" and eventually to "stand" when sitting for too long, he considered her need to spend "some time lying down to relieve her back pain" up to "two to three times a day," among others. *Id.* The Eleventh Circuit has upheld the consideration of daily activities as rising to the level of substantial evidence in affirming the Commissioner's decision. *See Lanier v. Comm'r of Soc. Sec.*, 252 Fed. Appx. 311, 314 (11th Cir. 2007). Here, the ALJ considered Cawley's ability to cook, wash dishes, care for and walk her dog, do laundry, go shopping, lift a ten pound bag of potatoes, drive, dine out, watch movies at home, visit family, vacuum, and use the computer. Tr. 16-17. Including the required breaks needed to perform each of these activities, the ALJ found that Cawley's "activities of daily living are substantially inconsistent with her allegations." Tr. 17.

Once again, "a clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562 (citing *MacGregor*, 786 F.2d at 1054). The Court finds the record provides substantial evidence for the ALJ's pain standard and credibility findings. Consequently, there is no error in the ALJ's two-part pain standard or credibility determination insofar as he found a lack of objective medical evidence to support the claim, then in turn reviewed Cawley's subjective testimony, and gave explicit explanation as to why he did not find it credible.

**B.     The ALJ's RFC assessment is supported by the evidence.**

Cawley argues that ALJ's RFC assessment lacks support because there is no RFC assessment completed by a physician in the record. *See* Doc. 9 at 13. Cawley claims that "the record is devoid of any RFC assessments from any physicians whatsoever" and, therefore, the ALJ's RFC assessment is not supported by the evidence. *See Id.* at 13.

A RFC assessment is used to determine the claimant's capacity to do as much as they are possibly able to do despite their limitations. *See* 20 C.F.R. § 404.1545(a)(1) (2010). An RFC assessment will be made based on all relevant evidence in the case record. *Id.*; *Lewis*, 125 F.3d at 1440. At an ALJ hearing, "the [ALJ] is responsible for assessing [the claimant's] residual functional capacity." 20 C.F.R. § 404.1546(c) (2010). The claimant is "responsible for providing the evidence [the ALJ] will use to make a finding about [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(a)(3) (2010). The ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making

every reasonable effort to help [the claimant] get medical reports from [their] own medical sources.  *Id.; Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988).  "The ALJ is not required to seek additional independent expert medical testimony before making a disability determination if the record is sufficient and additional expert testimony is not necessary for an informed decision."  *Nation v. Barnhart*, 153 Fed. Appx. 597, 598 (11th Cir. 2005) (citing *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir.1999)).

      Here, the ALJ made his RFC assessment based on all of the evidence in the record, and Cawley does not dispute this.  Tr. 14.  Cawley submitted all existing and relevant evidence into the record.  Tr. 48.  At the end of the hearing, the ALJ verified that there were no missing medical records or other information that he would need to fully develop the record, to which Cawley responded that all relevant medical records had been submitted.  *Id.*  To date, the Court is not aware of any new evidence that has been submitted, nor does Cawley assert that there is any which exists.  The ALJ met his duty to develop the record with Cawley's complete medical history.  *See Nation*, 153 Fed. Appx. at 599 (holding that the ALJ fully and fairly developed the record despite not requesting a physician to perform a RFC assessment).

      In making his findings, the ALJ considered all of the evidence including medical records and opinion evidence.  The ALJ gave the records and opinion of Dr. Maddox "great weight."  Tr. 17-18.  Dr. Maddox repeatedly refused to perform surgery on Cawley's back despite her many requests, and as recent as the ALJ hearing there is no record that any surgery to be done.  Tr. 17.  Dr. Maddox performed both a knee

examination and a straight leg raising test and found both to be unremarkable. *Id.* Regarding any pain Cawley was suffering, Dr. Maddox simply told her she would have to "tolerate the pain." Tr. 18. Dr. Maddox, as recently as 2008, stated that Cawley did not need a lumbar infusion and that her symptoms had been unchanged for the full year prior. *Id.* Dr. Granger's opinion was likewise given "good weight" regarding his successful surgery and treatment of Cawley's knee. *Id.* The ALJ found that Dr. Granger's opinion and treatment notes are inconsistent with Cawley's allegations of functional abilities. *Id.* The ALJ reviewed and disregarded the opinions of Dr. Hassan Kesswewani and Dr. Robert Shedden because their recent treatments and opinions are not supported by medical evidence prior to the date last insured. *Id.* Cawley and her husband's opinion evidence was also considered regarding their activities of daily living, but the ALJ found that their opinions are "inconsistent with the medical evidence and unsupported for the period of adjudication." *Id.*

During the hearing, the ALJ arranged for a consultation with a VE to help him assess Cawley's RFC based on the facts in the record, which is within the ALJ's discretion to seek consultation if he deems it necessary. Tr. 43-48. The VE testified that the hypothetical person of Cawley's age, education, work experience, and RFC would be able to perform Cawley's past relevant work as a daycare worker or as her prior job as a survey worker. Tr. 45. Cawley was given the opportunity to question the VE, and has presented no evidence to refute the VE's testimony. Tr. 48.

Thus Cawley did not meet her responsibility to provide the evidence she wanted the ALJ to use in making his determination. The ALJ is responsible to determine

Cawley's RFC – not a physician.  Had Cawley received an assessment by a physician, the ALJ would have been required to consider that assessment in making his determination.  There is no duty on an ALJ that requires them to arrange a physical examination or create new medical evidence, that duty is placed upon the claimant.  Therefore, the Court finds that the ALJ properly conducted his RFC assessment based upon the evidence in the record.

## VII.  CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**  A separate judgment is entered herewith.

DONE this 23rd day of September, 2011.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE